## W. C. MacNutt & Company's Assigned Estate.

*Assignment for benefit of creditors—Individual assets—Special assignment.*

Where two partners execute an assignment for the benefit of creditors, and a question arises as to whether the assignment covers individual as well as partnership assets, and thereafter it appears that one of the partners individually owned the proceeds of a policy of insurance not as yet paid by the insurance company, and the assignee and the individual partner agree that the proceeds should be paid to the partner's attorney and divided by him in certain proportions between the assignee and the partner, and the attorney after collecting the insurance money, sends the part agreed upon to the assignee in a letter which indicates that the fund is to be applied by the assignee to the partner's individual creditors, such letter is to be construed as a special assignment of the fund in question for the individual creditors, however the general assignment may be construed.

Argued Dec. 15, 1911. Appeal, No. 9, Oct. T., 1911, by Willis C. MacNutt, from order of C. P. No. 3, Phila. Co., March T., 1906, No. 4,367, dismissing exceptions to auditor's report in the Matter of the Assigned Estate of Willis C. MacNutt and George J. Conly, trading as W. C. MacNutt & Co. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to report of John T. Murphy, Esq., auditor. The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*Harry L. Stirling,* with him *Frederick H. Warner,* for appellant.

*Joseph deF. Junkin,* for appellee.

OPINION BY MORRISON, J., March 1, 1912:

Willis C. MacNutt and George J. Conly, trading as W. C. MacNutt and Company, on May 19, 1906, made a voluntary deed of assignment to Frederick C. Newbourg, Jr., Esq., for the benefit of creditors. The important clauses of the assignment over which the assignors and the assignee dispute are as follows: "Whereas the said Willis C. Mac-Nutt and George J. Conly, trading as W. C. MacNutt & Company, owing to sundry losses and misfortunes are at present unable to pay their just debts;

"And whereas they are willing to assign all their property not exempt by law from execution for the benefit of their creditors;

"Now this indenture witnesseth: . . . . have granted, bargained, sold, assigned, transferred and set over, and by these presents do grant, bargain, sell, assign, transfer and set over unto the said Frederick C. Newbourg, Jr., his heirs, executors, administrators and assigns, all the real and personal property, rights and credits of whatsoever kind, and wheresoever situate of them and the said Willis C. MacNutt and George J. Conly, trading as W. C. MacNutt & Co."

The assignors contended that the deed of assignment conveyed firm property only, but the assignee claimed and demanded of the partners a statement of their personal assets. Conly's statement disclosed nothing, but Mac-Nutt's disclosed that he had an interest in a life insurance policy on one Pyle, who was then alive. Later Pyle died, and as both MacNutt and the assignee claimed the former's interest in the policy, the insurance company would

not pay till the parties had adjusted their differences. MacNutt's interest was found to amount to $2,530.10. In order to collect this money from the company it was agreed that a check, drawn to the joint order of MacNutt and the assignee, should be sent by the company to Mac-Nutt's attorney, and it being indorsed by the payees thereof, the said attorney then paid over to the assignee $1,113.23, inclosing his check for that amount in a letter hereinafter quoted which is important. At the audit of the assignee's second and final account, said sum was accounted for by the assignee, separately, and it was distributed to MacNutt's individual creditors. Prior to said distribution MacNutt referred a number of his individual creditors to the assignee for payment of their claims. And his then attorney requested notice of the time of filing the account so that such creditors could be notified to present their claims. But MacNutt, later, changed his mind and claimed the fund on the theory that it had merely been paid to the assignee until it could be determined whether under the deed of assignment he had a right to MacNutt's individual assets, and he, MacNutt, then claimed that the assignee had no such right and denied his authority to distribute the fund. The auditor decided against his contention and distributed the fund to the individual creditors of MacNutt and he excepted, but his exceptions were dismissed by the auditor, and on appeal to the common pleas were there dismissed, but the learned court did not base his decision on the theory that the deed of assignment conveyed MacNutt's individual assets to the assignee. From that decision we have this appeal.

There is considerable contention on the question of whether the deed of assignment did more than convey the firm property to the assignee. The view we take of this case renders it unimportant to decide that question. If, however, we felt called upon to decide it we would hesitate before differing with the court below on that question.

It appears from the assignee's second account, which gives rise to the contention in this appeal, that on the first

account of the assignee there were individual assets of MacNutt in the hands of the assignee and passed upon by the auditor on the theory that the assignee had the right to such assets. The present account, as to MacNutt's individual assets, is stated as follows: "The accountant also charges himself with the following items received by him, and believed by him to be assets of the individual estate of W. C. MacNutt:

"Balance awarded to him by the auditor's
    report on his first account as assignee,  .     $68.02
1909, May 10. . . . from insurance policy
    on John J. Pyle, . . . . . . . . . .     1,113.24
Interest on deposits, . . . . . . . . .     22.36
                                            ─────────
                        Total, . . . $1,203.62

"The accountant claims credit for disbursements as follows:

"Joseph de F. Junkin, counsel fee to
    date, . . . . . . . . . . . .   $100.00
Commissions to accountant 5% on
    $1,135.60, . . . . . . . . .     56.78   156.78
                                    ──────  ──────
            Balance on hand,   .         $1,046.84"

The auditor distributed this balance as follows:
He first deducted auditor's fee of $50.00, leaving net balance for distribution $996.84. The claims proved aggregated $1,206.52 and the dividend thereon was 82.62 per cent. This distribution was to the individual creditors of MacNutt and it was confirmed finally by the court below.

As before stated the interest of MacNutt in the insurance policy was $2,530.10, and by a letter printed in the record, and signed by Willis C. MacNutt and Frederick C. Newbourg, Jr., assignee, it was agreed that said sum, MacNutt's interest, should be paid by a check drawn to the joint order of Willis C. MacNutt and Frederick C. Newbourg, Jr., assignee, and when this check was received it was indorsed by each of them over to the order of John

Douglas Brown, Esq., MacNutt's attorney, who then, in pursuance of the agreement between MacNutt and the assignee, distributed the proceeds as follows, viz.: $1,113.24 to the assignee, and the balance to MacNutt. This payment to the assignee was made by Mr. Brown on May 8, 1909, accompanied by the following letter:

"PHILADELPHIA, May 8, 1909.

"Frederick C. Newbourg, Jr., Esq.,

"401 Real Estate Trust Building,

"Philadelphia, Pa.

"My dear Mr. Newbourg:

"My bank has advised me of the payment of the draft of the Connecticut Mutual Life Insurance Company, which you and Mr. MacNutt endorsed over to me. I am therefore enclosing my cheque to your order for $1,113.24, being the $1,100 which we originally agreed upon in our settlement of your claim as assignee of Mr. MacNutt's interest in this policy, to which, as per our understanding, I have added eleven-twenty-fifths of the $30.10, which was the MacNutt share of the post-mortem dividend or surplus payment of some sort which the company made. As this fund has been realized from the personal assets of Mr. MacNutt, I presume when you come to file a later account it will be added to the balance of the proceeds of Mr. MacNutt's personal assets, which, at the audit of your first account was left in your hands for further accounting. I shall therefore ask to be advised when the account is filed in order that Mr. MacNutt's personal creditors may have notice to present claims

"Yours very truly,

"JOHN DOUGLAS BROWN."

It is conceded on all hands that this payment to the assignee was the result of a compromise between MacNutt and the assignee, they both having claimed MacNutt's entire interest in the policy, and MacNutt acted under the advice of his own counsel, to wit, John Douglas Brown. For these reasons the learned court below, although being

of the opinion that the deed of assignment did not convey MacNutt's interest in the insurance policy to the assignee, overruled the exceptions and confirmed the auditor's distribution, in an opinion of which the following is a copy:

"Per Curiam, December 29, 1910.

"We are of opinion the deed of assignment in this case cannot be construed to be an assignment of individual assets. The assignee, therefore, had no title to the proceeds of the life insurance policy in which the assignor, MacNutt, had an individual interest. As between them, therefore, the proper method of determination of their rights was the framing of an interpleader, in which the probable result would have been a judgment in favor of MacNutt. This method of settling the question could have been invoked at any time, up to the actual payment of the money to the assignee. MacNutt, however, agreed to a compromise of the matter and his agreement as evidenced by the letter of his counsel in transmitting the money must be held to be a constructive assignment of that particular money in trust for his individual creditors. Whether the form of assignment was such as to lay it open to attack upon technical grounds, need not be considered, because the only persons who could validly take advantage of any informality would be the individual creditors. The assignor having compromised the question and agreed to the receipt of this fund by the assignee, for the benefit of the individual creditors is without power to attack it.

"The exceptions are dismissed."

The auditor found as a fact as follows:

"That this payment of $1,113.24 to the assignee was made to him with the express agreement and consent of Willis C. MacNutt; while the entire share of the proceeds of the policy, which represented MacNutt's interest, amounted to $2,530.10, the assignee accepted $1,113.24 in full for his interest in the policy after consultation with counsel, because of the doubt which existed in the minds of counsel as to whether he had any right whatever in the policy because of the fact that the deed of assignment covered

only firm property, and that this was an individual asset of Willis C. MacNutt; and that, acting under the advice of counsel, he entered into a compromise agreement with MacNutt in order to avoid litigation and the doubts incident thereto.

" The auditor further finds that after the fund came into the assignee's hands, MacNutt referred a number of his individual creditors to the assignee for the payment of their claims.

" The auditor further finds:

" There was no evidence offered by MacNutt to contradict in any way the testimony of the assignee."

Upon these undisputed and conceded facts the learned court below held that the compromise agreement between the assignor and MacNutt by which the former received this fund, constituted a constructive assignment of that particular money in trust for MacNutt's individual creditors. We are unable to see how the court could have reached any other conclusion. The assignee for the benefit of creditors had previously filed an account in which he had accounted for individual, as well as firm, assets, and a distribution had been made to both individual and firm creditors and to this the appellant had made no objection. Whether Newbourg, assignee, received the money as assignee, under the original deed or by reason of the compromise agreement between himself and MacNutt, he did receive it for the benefit of the individual creditors of Willis C. MacNutt, and while they do not complain and urge that all of MacNutt's interest in the insurance policy should have been paid to the assignee, we think MacNutt cannot now be heard to complain that the assignee distributed this money to the creditors who had just and unpaid claims as seems to be conceded. We are unable to see why MacNutt is not bound by the letter of Mr. Brown, his attorney. As is well said by appellee's counsel in his printed argument: "MacNutt at some stage of the proceedings created a trust in the hands of Mr. Newbourg for the benefit of his individual creditors. It makes no differ-

ence whether it was under the original deed or under proceedings which resulted in the compromise; the money was carved out of MacNutt's property, paid over by his consent for the benefit of his creditors, and the fund belongs to them, and not to him. It is respectfully submitted that appellant's contention is not founded upon sound principles of either law or morals and that the judgment of the court below should be affirmed at the costs of the appellant."

We have all reached the conclusion that upon the conceded facts the learned court below did not err in dismissing the exceptions and confirming the auditor's report, making distribution of the fund in question to the individual creditors of Willis C. MacNutt.

The assignments of error are all dismissed and the appeal is dismissed at the costs of the appellant, Willis C. MacNutt.

Decree affirmed.